Christopher A. Seeger
Christopher L. Ayers
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
(973) 639-1000
cseeger@seegerweiss.com
cayers@seegerweiss.com

# UNITED STATES DISTRICT COURT FOR THE

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MUHAMMAD ADNAN,<br><br>individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUBARU CORPORATION and SUBARU OF AMERICA, INC.,<br><br>Defendants. | Civil Action No. _____<br><br><br><br>**CLASS ACTION COMPLAINT and <u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Muhammad Adnan, on behalf of himself and all others similarly situated (the "Class"), alleges the following against Subaru Corporation and Subaru of America, Inc. ("Subaru" or "Defendants"). The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.[1]

## I.    INTRODUCTION

1.    This action concerns a dangerous defect in the low-pressure fuel pump (the "Fuel Pump Defect" or "defect") which can fail and cause Subaru's most popular models – including the Ascent, Impreza, Legacy, and Outback – to unexpectedly stall and cause engine shut down presenting an immediate and unreasonable risk of physical injury or death.

2.    Without fuel, a vehicle will lose power even if in operation. The fuel injection system uses fuel pumps to manage the flow of fuel from the fuel tank to the engine. The fuel system is  one of the most basic and critical systems in every gasoline-powered vehicle sold in the United States and throughout the world because it controls speed and keeps the  engine running unless until the driver chooses to turn it off.

3.     The fuel system is also a key to safe operation of a vehicle. If the fuel system in a vehicle is defective, the vehicle will no longer accelerate and decelerate controllably and could stall and lose power completely, even when in operation and in motion exposing occupants and others to extreme danger, or even death. A vehicle that stalls or suffers engine failure is at heightened risk of collision, and those stranded as a result of vehicle shutdown experience a heightened risk of danger.

---

[1] Counsel's investigation includes an analysis of publicly available information, including investigations by the National Highway Traffic Safety Administration ("NHTSA"), vehicle recalls, and additional analysis. Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

4.      Subaru has manufactured, marketed and sold the  Class Vehicles (defined below) with defective low-pressure fuel pumps that cause  unpredictable acceleration and engine stalls and render the Class Vehicles unsafe to operate.

5.      Despite knowledge of the defect, Subaru failed to fully disclose the defect and the corresponding dangers to Plaintiff and members of the Class, and has not repaired or replaced the defective systems and  continues to sell its vehicles with the unsafe and defective fuel  systems.

6.      Class Vehicles include all Subaru models that use the Denso low-pressure fuel pumps and fuel pump assemblies, including pumps that begin with part number prefix 42022-.  On April 16, 2020, Subaru initiated a voluntary safety recall with National Highway Traffic Safety Administration ("NHTSA") concerning these defective fuel pumps (the "Safety Recall"), recalling over  188,000 Subaru vehicles.  Exhibit A hereto.  That recall covered the following 2019 model year Subaru vehicles   (collectively, the "Recalled Vehicles"): Impreza, Outback, Legacy, and Ascent.

7.      It is believed based on investigations completed to date that the defective fuel system was used by Subaru in more than the Recalled Vehicles.  Based on complaints to NHTSA, this  defect has existed in Subaru vehicles since at least 2013, and continues to the present day.

8.      As a defect that compromises the safety of the Class Vehicles, the Fuel Pump Defect renders the Class Vehicle less valuable than consumers paid and creates out-of-pocket expenses that the consumer is left to carry.  Such a defect also heightens any duty Subaru had to disclose the defect.

9.      Plaintiff accordingly bring this class action complaint to recover on behalf of the Class all relief to which they are entitled, including but not limited to recovery of the purchase  price of their vehicles, compensation for overpayment and diminution in the value of their  vehicles, out-

of-pocket and incidental expenses, and an injunction compelling Subaru to replace   or recall and fix the Class Vehicles.

## II.    PARTIES

### A.    Plaintiff

#### Plaintiff Muhammad Adnan

10.    Plaintiff Muhammad Adnan is a resident of the State of California, in Long Beach. On or about January 14, 2019, Plaintiff purchased his 2019 Subaru Ascent (a Class Vehicle) at Santa Monica Subaru (an authorized Subaru Dealership) in Santa Monica, California.

11.    Unknown to Plaintiff at the time the Class Vehicle was purchased, it was equipped with the defective fuel system with the Fuel Pump Defect. Subaru's unfair, negligent, and deceptive conduct in designing,   manufacturing, marketing, selling, servicing, and leasing the Class Vehicle with the Fuel Pump Defect has caused Plaintiff out-of-pocket loss and diminished value of the Class Vehicle.

12.    Plaintiff uses the Class Vehicle for personal and family uses. Prior to choosing  the Class Vehicle, Plaintiff considered the safety and reliability of the Class Vehicle, which was the subject of Subaru's extensive marketing of the Class Vehicles, which feature was important to Plaintiff.  At no time prior to Plaintiff's decision to acquire the Class Vehicle did Subaru disclose that the Class Vehicle possessed any fuel system defects.

13.    Had Subaru disclosed the Fuel Pump Defect and the corresponding dangers, and the fact that Subaru would require  Plaintiff to pay out-of-pocket costs, including repair costs, Plaintiff would have received these disclosures, and he would not have chosen the Class Vehicle or would have paid less for it.

### B.    Defendants

#### Subaru Corporation

14.    Defendant Subaru Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan, in the Shibuya province.

15.    Subaru Corporation has purposefully availed itself of this jurisdiction by designing, manufacturing, marketing, distributing, and selling the Class Vehicles in United States and maintaining affiliate headquarters in New Jersey.

#### Subaru of America, Inc.

16.    Defendant Subaru of America, Inc. is a New Jersey corporation with its principal place of business in Camden, New Jersey.

17.    Subaru of America, Inc., a wholly owned subsidiary of Subaru Corporation, serves as Subaru Corporation's sales and marketing agent in the United States. Subaru of America, Inc., is responsible for marketing, selling, distributing, and servicing the Class Vehicles in the United States.

### III.    JURISDICTION

18.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

19.    This Court has personal jurisdiction over Subaru by virtue of its transacting and doing business in this District, including locating and operating its headquarters in Camden, New Jersey, in this District. Subaru has purposefully availed itself of the benefits and protections of the

District of New Jersey by continuously and systematically conducting substantial business in  this judicial district.

20.     This Court has personal jurisdiction over Subaru by virtue of its transacting and doing business in this District, including locating and operating its headquarters in this District.

## IV.     VENUE

21.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part  of the events or omissions giving rise to the claims occurred in this District. Subaru licenses authorized dealers in this District, it advertises in this District, and it profits from its activities conducted within this District.

## V.     FACTUAL ALLEGATIONS

### A.     The Defective Fuel System

22.     The Subaru fuel system relies on two fuel pumps to supply fuel to the engine: a low pressure fuel pump (in-tank) and high pressure fuel pump (in-line). The low pressure fuel pump is mounted inside the fuel tank and pumps fuel from the fuel tank to the engine by pushing fuel to the fuel injection system. The impeller, located under the pump motor is a plastic disk that rotates and draws in fuel and impels it up through the pump, which looks like this:



23.     The Safety Recall described the defect in the low-pressure fuel pump as: "a low pressure fuel pump . . . which includes an impeller that was manufactured with a lower density. If the surface of the lower density impeller is exposed to solvent drying for longer periods of time, it may develop fine cracks. Those cracks may lead to excessive fuel absorption, resulting in impeller deformation. Over time, the impeller may become deformed enough to interfere with the body of the fuel pump, potentially causing the low pressure fuel pump to become inoperative." Exhibit A, at 5

24.     The Safety Recall also described the "Safety Risk": "If the low pressure fuel pump becomes inoperative, the check engine warning light or malfunction indicator light may illuminate, and/or the engine may run rough. In the worst case, an inoperative fuel pump may result in the *engine stalling without the ability to restart the vehicle, increasing the risk of a crash*." *Id.*, at 5-6 (emphasis added).

25.     The recall included only some 2019 model year vehicles and no earlier or later model years regardless of model.

26.     However, Subaru has for many years sourced components in its vehicles from Denso Corporation, a Japanese auto parts supplier, including fuel system components. As early as 2015, Denso had recognized that the low-pressure fuel pumps that it supplied to Subaru and other manufacturers were prone to failure in the same manner as the failure that drove the Safety Recall.

27.     In a patent application filed in 2016, Denso admitted that the composite (plastic) impellers in its current and earlier low-pressure fuel pumps "may be swelled due to the fuel and water contained in the fuel, [and] therefore a rotation of the impeller may be stopped when the impeller is swelled and comes in contact with the [fuel pump] housing."[2]

---

[2]  U.S. Patent Application No. 15767375, *Impeller for Fuel Pump* (Oct. 26, 2016) (applicants Denso Corporation, et al.), available at https://patentscope.wipo.int/search/

28.     Accordingly, the Class Vehicles include all Subaru vehicles that were equipped with the same defective Denso fuel pumps and are not limited to the Recall Vehicles.  At the minimum, the defective Denso components include all parts that begin with part number prefix 42022-, the single common part in every model that Subaru has recalled for the admitted fuel system defect.

29.     As the Recall Notice makes clear, Denso did not start using a filter with a higher density impeller until July 2019, which is being used as part of the recall.  *Id.*, at p. 7.

**B.      Subaru Has Not Acted to Address the Fuel Pump Defect in Class Vehicles**

30.     Despite the safety concerns raised by the defect, Subaru has not fixed all the Recalled Vehicles, or any of other Class Vehicles. Upon   information and belief, and based on Subaru's website dedicated to recalls, a substantial number   of the Recalled Vehicles have not even been recalled  yet, leaving vehicle owners without the means to replace the pump or even the knowledge that this  dangerous defect exists.

31.     Rather than spend the money necessary to address the defect, or at least warn its customers that they have cars equipped with faulty fuel pumps, Subaru has shifted the significant and serious risk of inoperable vehicles, accidents, injury, and even death onto its customers.  Subaru has not adequately notified consumers about the defect or advised them to stop driving their Class Vehicles until repairs can be made and does not provide loaner cars or other, alternative transportation pending such repairs.   This leaves the consumers shouldering the costs, both financial and in a sense of well-being and safety, of the fuel system defect

**C.      NHTSA Complaints Reveal That the Fuel Pump Defect Poses Serious Safety Risks**

32.     The complaints of Class Vehicle owners to NHTSA make clear the true scope of the defect, including the models and model years affected by the defect.

en/detail.jsf?docId=US231859533 (last visited July 7, 2020).

**Recalled Vehicles**

33.    As would been expected, there have been hundreds or thousands of reports to NHTSA about the hazards posed by the Recalled  Vehicles. For example, on February 7, 2020, a 2019 Subaru Ascent owner reported to NHTSA as  follows:[3]

> VEHICLE LOSES POWER AFTER RAPID ACCELERATION  ABOVE 45MPH. A WHOOSHING SOUND OCCURS AND - THEN ACCELERATION IS LIMITED. ALL WARNING  LIGHTS FLASH INCLUDING "CHECK ENGINE." THIS HAS  OCCURRED ONCE ABOUT A MONTH AGO AND DIAGNOSED AS A POORLY REPLACED GAS CAP— ALTHOUGH IT WAS ACTUALLY ON SECURELY. IT  OCCURRED 2 WEEKS LATER 3 MORE TIMES WITHIN TWO  DAYS. I BROUGHT IT IN WITH THE LIGHTS ON AND ISSUE STILL OCCURRING TO SUBARU PACIFIC. THEY CLEARED CODES AND TRIED TO RECREATE ISSUE  WITHOUT SUCCESS. THEY RELEASED THE CAR BACK TO ME AFTER CORPORATE DEFERRED TO THEM. UPON  DRIVING OUT OF DEALERSHIP, THE SAME THING HAPPENED ONLY AFTER ACCELERATION ABOVE 18  MPH—ALL WARNING LIGHTS BACK ON AND  SPUTTERING/JERKING/LOSS OF POWER. WHOOSHING SOUND. DEALER IS IN POSSESSION OF THE CAR AGAIN  TO LOOK INTO IT. ALSO, THISE TENDS TO BE A GREY-  BLUE HUE TO THE EXHAUST EACH TIME CAR STARTS.

34.    On September 12, 2019, a 2019 Subaru Impreza owner reported to NHTSA as follows:[4]

> CAR STOPPED RUNNING WHILE DRIVING DOWN THE  STREET. AUTOMOBILE WAS TOWED TO DEALER  YESTERDAY (9-11-19). DEALER, CALLED TODAY (9-12-19)  SAID PROBLEM IS A BAD FUEL PUMP AND MAY TAKE UP TO A MONTH TO GET THE ORDERED PART DELIVERED  AND INSTALLED. NEW VEHICLE PURCHASED APRIL, 2019

---

[3]  NHTSA Complaint 11307822
[4]  NHTSA Complaint 11255104

**Pre-Recall Vehicles with the Defect**

35.    As early as the 2013 model years, Class Vehicles were claimed to have suffered

from the same failures as those associated with the Recalled Vehicles with the fuel system defect.

For example, on April 17, 2017, a 2013 Subaru Outback owner reported to NHTSA as follows:[5]

> ISSUE: OCCASIONAL NON-RESPONSE WHEN DEPRESSING THE ACCELERATOR.
>
> 1ST OCCURRENCE ABOUT THREE WEEKS AGO HAPPEN WHEN I STOPPED FOR A LIGHT AND THEN ATTEMPTED TO ACCELERATE. DEPRESSING THE PEDAL HAS NO RESPONSE, ATTEMPTED THIS THREE TIMES. THE RPM GAUGE REFLECTED IT WAS RUNNING. I TURNED ON THE CAR AND STARTED IT AGAIN AND IT WORKED.
>
> 2ND OCCURRENCE HAPPENED AGAIN AFTER A STOP. SAME AS ABOVE.
>
> 3RD OCCURRENCE MAY 6 2017 RETURNING FROM BWI IN BALTIMORE ON THE INTERSTATE, I WAS IN HEAVY TRAFFIC. I HAD TO SLOW QUICKLY FOR A TRUCK AND THEN SAW AN OPENING IN THE LEFT LANE AND PULLED OUT INTO THE LEFT LANE AND ATTEMPTED TO ACCELERATE WITH NO RESPONSE. *A CAR MOVING FAST IN THE LEFT LANE ALMOST HIT ME SINCE I COULD NOT ACCELERATE.* I PUMPED THE ACCELERATOR TWICE AND IT THEN ACCELERATED.
>
> 4TH OCCURRENCE MAY 6TH 2017 DEPARTING A PARKING LOT I WAS MOVING SLOWLY THEN ATTEMPTED TO ACCELERATE AND EXPERIENCED A DELAYED RESPONSE. PUMPED THE PEDAL TWICE TO GET THE RESPONSE.
>
> WENT TO A SUBARU DEALER AFTER THE FIRST TWO OCCURRENCES AND THEY SAID THEY COULD NOT IDENTIFY THE PROBLEM. THE DEALER CALLED AGAIN AND REQUESTED WE BRING THE CAR IN AGAIN APRIL 11TH.
>
> A WEB SEARCH REVEALED ABOUT 24 OTHIS LIKE OCCURRENCES WITH OUTBACK ABOUT THE SAME YEAR AND MAKE.

---

[5]  NHTSA Complaint 10971205.

36.    Similarly, on March 15, 2020, a 2014 Subaru Outback owner reported to NHTSA

as follows:[6]

DELAYED GAS PEDAL RESPONSE=HESITATION TO ACCELERATE
WHEN GAS PEDAL ENGAGED FROM A STATIONARY STOP. I HAVE
EXPERIENCED THIS FAILURE TO ACCELERATE THE VEHICLE FROM
A STOPPED POSITION IN EXCESS OF 25 TIMES OVER A MORE THAN 5
YEAR PERIOD.

THE SUBARU IS NOT MINE BUT A RELATIVES CAR. IN EARLY
FEBRUARY 2019, I WAS STOPPED AT A LIGHT ATTEMPTING TO MAKE
A LEFT HAND TURN.

TRAFFIC COMING AT ME WAS UP A HILL WITH A GRADE OF 6% OR
MORE WHICH LIMITED THE LINE OF SIGHT FOR SOMEONE WANTING
TO MAKE A LEFT HAND TURN AT THAT INTERSECTION. AS I STEPPED
ON THE GAS TO MAKE THE TURN THISE WAS NO RESPONSE FROM
THE CAR. THE CAR COMING UP THE HILL WAS UPON ME. I PUMPED
THE GAS SEVERAL TIMES AND LUCKILY WAS ABLE TO MAKE IT
THROUGH THE *INTERSECTION. MY WIFE AND I WERE INCHES AWAY
FROM BEING WACKED BY THE OTHIS CAR.* THE CAR APPROACHING
HAS A SPEED LIMIT OF 45 MPH BUT WAS MOST LIKELY TRAVELING
IN EXCESS OF 45 MPH. ONCE THROUGH THE INTERSECTION, WE
PULLED TO THE CURB TO GATHIS OURSELVES.

THAT'S WHEN I SAID ENOUGH IS ENOUGH AND SENT TWO LETTERS
TO TOM DOLL OF SUBARU. ONE IN FEBRUARY & APRIL 2019. HE OF
COURSE PASS IT ON TO CSERVICE. THE INDIVIDUAL WROTE BACK
SAYING NOTHING IS WRONG.

I AM A PROFESSIONAL ENGINEER AND HAVE BEEN FOR MANY
YEARS. I POINTED OUT ALL ENGINEERS INCLUDING AUTOMOTIVE
ENGINEERS MUST ADHISE TO A CODE OF ETHICS & ADHISE TO THE
"HIGHEST STANDARDS OF HONESTY AND INTEGRITY, AND MUST BE
DEDICATED TO THE PROTECTION OF THE PUBLIC HEALTH, SAFETY
AND WELFARE AND MUST ADHISE TO THE HIGHEST

PRINCIPLES OF ETHICAL CONDUCT." THAT MEANT NOTHING TO
SUBARU.

CLEARLY FROM MY EXPERIENCE THISE IS A PROBLEM WITH THE
2014 SUBARU OUTBACK AND IT'S RANDOM FAILURE TO
ACCELERATE DUE TO A DELAYED GAS PEDAL RESPONSE

---

[6] NHTSA Complaint 11318118.

37.     On October 24, 2014, the owner of both a 2014 Subaru Legacy and a 2013 Subaru

Impreza reported to NHTSA as follows:[7]

> VEHICLE HAD A 2-5 SECONDS ACCELERATION HESITATION. TAKING OFF FROM A YIELD SIGN AND GOING ACROSS A HWY, THE CAR HAD ENOUGH POWER TO ROLL FORWARD. TRIED FLOORING THE ACCELERATOR, BUT ALSO DID NOT RESPOND TO FULL THROTTLE UNTIL AFTER A FEW SECONDS THE CAR STARTED TO SLOWLY MOVE. THE ENGINE IS ON LOW RPMS AND DOES NOT LAUNCH FORWARD AS TO INDICATE A TRANSMISSION ISSUE IT LOOKS MORE LIKE A FUEL DELIVERY OR THROTTLE SENSOR ISSUE.
>
> I ALSO HAD THIS SAME ISSUE WITH A 2013 SUBARU IMPREZA (TRADED IN THE IMPREZA THINKING IT WAS A QUIRK WITH THE CAR). SUBARU DEALER WAS NOT BEEN ABLE TO REPRODUCE THE ISSUE ON THE IMPREZA OR THE ON THE LEGACY. NO ERROR CODES PRESENT.
>
> I CONTACTED SUBARU OF AMERICA, I WAS INSTRUCTED TO TAKE THE CAR (LEGACY) TO THE DEALER. THE TECHNICIAN WAS NOT ASKED TO ATTACH ANY KIND OF DIAGNOSTIC EQUIPMENT TO POSSIBLY CAPTURE VALUABLE DATA IN THE EVENT THAT THE ISSUE WAS REPRODUCED. WHEN THE PROBLEM HAS MANIFESTED, I HAVE ACCELERATED FROM A COMPLETE STOP OR FROM A SLOW ROLLING YIELD, THEN 2 - 5 SECOND DELAY IN ACCELERATION - VERSLOW ROLL FORWARD. I SHARED THIS INFORMATION WITH THE DEALER.
>
> ***MY FAMILY AND I ALMOST GOT HIT A FEW WEEKS AGO BY A CAR GOING AROUND 60 MPH AND I WAS ALMOST HIT WHEN DRIVING THE IMPREZA (LET THE CAR ROLL BACK TO AVOID BEING HIT - I WAS ON SMALL INCLINE LEAVING MY NEIGHBORHOOD AND TRYING TO MERGE ONTO A HWY).***
>
> MANY SUBARU OWNERS ARE HAVING THE SAME ISSUE (OLD / NEW VEHICLES). ***THISE ARE SOME BLOGS WHISE CUSTOMERS MENTION HAVING BEEN IN AN ACCIDENT BECAUSE OF THIS ISSUE*** AND PLENTY OF BLOGS WHISE CUSTOMERS REPORT THE PROBLEM AND FRUSTRATION WHEN THE PROBLEM CANNOT BE REPRODUCED AND ARE SENT HOME WITHOUT A FIX.
>
> HOW CAN SAFERCAR.GOV HELP COMMUNICATE THE IMPORTANCE OF THE ISSUE TO SUBARU BEFORE A FATALITY?

---

[7]  NHTSA Complaint 10649644

38.    On November 15, 2014, a 2014 Subaru Legacy owner reported to NHTSA as follows:[8]

> I PURCHASED MY BRAND NEW 2014 SUBARU LEGACY ON MAY 16TH 2014. ABOUT ONE WEEK LATER I WAS DRIVING UP THE SLIGHT INCLINE OF THE DRIVEWAY OF THE APARTMENT HOUSE WHISE I LIVE. AS I REACHED THE STREET I STEPPED ON THE ACCELERATOR TO TURN OUT INTO THE TRAFFIC AND THE CAR COMPLETELY LOST POWER. ABOUT 5 SECONDS LATER THE POWER RETURNED AND THE CAR RESPONDED NORMALLY WHEN I STEPPED ON THE ACCELERATOR PEDAL AND I WAS ABLE TO DRIVE THE CAR NORMALLY. THREE OR FOUR DAYS LATER THE SAME THING HAPPENED AGAIN WHILE I WAS DRIVING IN TRAFFIC, AS I TRIED TO ACCELERATE THE CAR'S ENGINE LOST POWER WHEN I STEPPED ON THE ACCELERATOR. THIS SAME LOSS OF POWER NOW HAPPENS ABOUT TWO OR THREE TIMES EACH WEEK. I CURRENTLY HAVE ABOUT 2500 MILES ON THE CAR. I HAVE TAKEN IT TO MY LOCAL SUBARU DEALERSHIP ON THREE SEPARATE OCCASIONS FOR THIS COMPLAINT AND THEY HAVE KEPT THE CAR FOR A
>
> TOTAL OF ABOUT THIRTY DAY FOR OBSERVATION, TESTING, AND REPAIR BUT THEY HAVE BEEN UNABLE TO REPRODUCE OR SOLVE THE PROBLEM AND CAN FIND NOTHING WRONG WITH MY CAR. THEY WARNED ME ABOUT DRIVING WITH TWO FEET BECAUSE IF THE BRAKE IS APPLIED AT THE SAME TIME AS THE ACCELERATOR A PROBLEM LIKE THIS COULD OCCUR BUT I DO NOT DRIVE USING BOTH FEET AND HAVE ALWAYS DRIVEN USING ONLY ONE FOOT

39.    On May 27, 2016, a 2015 Subaru Impreza owner reported to NHTSA as follows:[9]

> CAR WILL HAVE A SLOW OR NON RESPONSIVE START FROM A STOP. THISE WILL BE A COUPLE SECOND LAG FROM THE TIME I PRESS ON THE ACCELERATOR.

40.    On January 2, 2019, the owner of a 2016 Subaru Outback filed the following complaint with NHTSA:[10]

> ON TWO OCCASIONS WHILE DRIVING ON THE INTERSTATE AT 65-75 MPH WITH NO WARNING THE GAS PEDAL STOPPED RESPONDING TO

---

[8]  NHTSA Complaint 10655186.
[9]  NHTSA Complaint 10871184
[10]  NHTSA Complaint 11164684

INPUTS. WHILE MANEUVERING THE VEHICLE TO THE SHOULDER OF THE ROAD THROUGH TRAFFIC THE ENGINE SHUTOFF. ON ONE OCCASION I WAS ABLE TO RESTART THE VEHICLE AND ON THE SECOND OCCASION IT WOULD NOT RESTART. AFTER TOWING THE VEHICLE TO A REPAIR SHOP THE VEHICLE STARTED UP AND RAN WITH NO ISSUES. NO CHECK ENGINE LIGHTS WERE EVER DISPLAYED. THE BATTERY WAS WORKING FINE AND FULLY CHARGED. THE CAR IS IN PERFECT MECHANICAL SHAPE WITH ALL REGULAR SERVICE PERFORMED. THE GAS REMAINING AT TIME OF INCIDENT WAS APPROXIMATELY 1/4 TANK FULL. THE CAUSE IS UNKNOWN TO ME.

39.    On January 29, 2020, a 2017 Subaru Outback owner reported to NHTSA as follows:[11]

CAR LOST POWER AND ENGINE SHUT DOWN WHILE AT FREEWAY SPEED WITH 1/8 TANK APPARENT REMAINING ON THE GAS GAUGE AND 60 MILES REMAINING ON THE MILES TO GO INDICATOR. ADDED 1 GALLON AT ROADSIDE AND CAR STARTED IMMEDIATELY. ADDED AN ADDITIONAL 15.5 GALLONS AT A STATION 12 MILES FROM POINT THE ENGINE SHUT DOWN. THIS LEAVES BETWEEN 2 AND 2.5 GALLONS OF UNUSED FUEL IN THE TANK AT THE POINT THE CAR SHUT DOWN FROM FUEL STARVATION.

41.    On September 5, 2018, the owner of a 2018 Subaru Forester filed the following complaint with NHTSA:[12]

TL* THE CONTACT OWNS A 2018 SUBARU FORESTER. WHILE DRIVING APPROXIMATELY 80 MPH, THE VEHICLE SUDDENLY LOST ENGINE POWER. THE VEHICLE WAS COASTED TO AN EXIT RAMP. THE CONTACT STATED THAT THE ENGINE WAS STILL IDLING EXTREMELY LOW AND THE VEHICLE WAS TURNED OFF AND RESTARTED. RIMROCK SUBARU (324 S 24TH ST W, BILLINGS, MT 59102, (406) 651-5200) REPLACED THE FUEL PUMP AND FUEL PUMP CONTROL MODULE; HOWEVER, THE FAILURE CONTINUED. THE DEALER REFERRED THE CONTACT TO THE MANUFACTURER AND OFFERED A TRADE-IN FOR A 2018 SUBARU OUTBACK. THE MANUFACTURER WAS NOT CONTACTED. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 4,200.

---

[11]   NHTSA Complaint 11302920.
[12]   NHTSA Complaint 11124519.

42.    On June 11, 2018, the owner of a 2018 Subaru Impreza filed the following complaint with NHTSA:[13]

> THE CAR HAS STALLED 3 TIMES WHILE DRIVING. AT A STOP SIGN, RED LIGHT AND AT A STOP SIGN. ***THE INCIDENT AT THE TRAFFIC LIGHT CAUSED THE VEHICLE TO START ROLLING BACKWARDS AND ALMOST HIT INTO ANOTHIS VEHICLE***. SUBARU CAN NOT FIND THE PROBLEM BUT ACKNOWLEDGES THE INCIDENTS OF STALLING. THE CAR IS NOT SAFE TO DRIVE AND WAS PURCHASED IN THE LATER HALF OF APRIL 2018.

### Other 2019 Subaru Models Not Included in Subaru's Recall

43.    In addition, even for the 2019 model year, Subaru was under inclusive when it failed to cover all the 2019 models. For example, on September 4, 2019, a 2019 Subaru Forester owner reported to  NHTSA as follows:[14]

> WHILE DRIVING AROUND 30MPH THE CAR WILL SOMETIMES HESITATE AND THEN LURCH IF THE GAS PEDAL IS VERY LIGHTLY PRESSED. SOMETIMES IT WILL DO IT AT HIGHIS SPEEDS AS WELL, AROUND 50MPH BUT NOT TYPICALLY AT FREEWAY SPEED. HAPPENS ON MOUNTAIN ROADS AND CITY STREETS. MOST NOTICEABLE WHEN KEEPING SPEED WITH A CAR AHEAD. WHEN PRESSING HARDER ON THE GAS PEDAL IT IS USUALLY NOT NOTICEABLE. WHEN DRIVING IN "SPORT" MODE OR WITH MANUAL PADDLE SHIFTERS SET AT 4TH GEAR OR LOWER IT DOES NOT HAPPEN. THIS IS A CVT SPORT MODEL. DROVE A LOANER OF THE SAME YEAR AND TRIM, WHICH SHOWED SIMILAR BEHAVIOR, ALTHOUGH LESS COMMON. SUBARU CLAIMS IT IS NORMAL BEHAVIOR.

44.    On April 12, 2019, a 2019 Subaru Forrester owner reported to NHTSA the following:[15]

> IN OUR 2 WEEK OLD 2019 FORESTER, WE WERE DRIVING  ON THE FREEWAY AT 65MPH AND FELT A SUDDEN JOLT AND THE CAR SHUT OFF: THE LIGHTS ON THE DASHBOARD WENT OFF, THE HEADLIGHTS WENT OFF,  THE TURN SIGNALS WOULD NOT WORK AND THE ACCELERATOR WASN'T WORKING. WE GUIDED THE  CAR OFF THE

---

[13]  NHTSA Complaint 11101252
[14]  NHTSA Complaint 11253275
[15]  NHTSA Complaint 11195742

FREEWAY AND SAT ON THE SIDE OF THE FREEWAY. THE DEALER'S MASTER MECHANIC CANNOT FIND ANY CODE THAT TELLS THEM WHAT IS WRONG SO THEY TELL US THISE IS NOTHING TO FIX. ***THIS IS OUTRAGEOUS. THIS WAS A LIFE-THREATENING EVENT SO WE DO NOT FEEL SAFE DRIVING THE CAR FOR OURSELVES AND OTHIS CARS ON THE FREEWAY. SUBARU IS NOT TAKING THIS SERIOUSLY***. WE READ THISE HAVE BEEN OTHIS "CAR STALL" PROBLEMS SIMILAR TO OURS WITH FORESTERS FROM OTHIS YEARS.

### Post-Recall Vehicles

45.     Finally, even as the 2020 models have only been on the market for months, NHTSA complaints reveal that the Fuel Pump Defect is present in these models as well. For example, on April 21, 2020, a 2020 Subaru Outback owner reported to NHTSA as follows:[50]

> WHEN DRIVING MY VEHICLE AROUND 50-70 IT WILL HESITATE AND ACTS LIKE IT WANTS TO STOP.
>
> NO WARNING LIGHTS COME ON HAVE TAKING BACK TO THE DEALER. THEY COULDN'T GET IT TO DO THIS. THE VEHICLE IS NOT COLD WHEN THIS HAPPENS. IT CAN BE AFTER I'VE BEEN DRIVING FOR 30 MINUTES OR MORE. THIS HAPPENS ON MAIN ROADS AND HIGHWAYS.

46.     The above complaints are just a small subset of the publicly available complaints submitted to NHTSA related to the kinds of hazards posed by the defect, and illustrate the risks posed to the life and welfare of owners of the Class Vehicles.

### D.    Subaru Marketed the Class Vehicles as Safe and Reliable

47.     One of Subaru's key marketing points has always been the practical claims of the safety and reliability of their vehicles. Subaru intends that consumers, including purchasers of Class Vehicles, will buy their vehicles because they believe them to be safe and reliable as asserted by Subaru.

48.    As a centerpiece of its marketing, Subaru's website amplifies this message and emphasizes the safety and  dependability of Subaru vehicles, including the Class Vehicles. Below is a screenshot from   Subaru's website showing the portrayal of its vehicles as safe and dependable.



On its website, Subaru proclaims that "When you choose a Subaru, you're not just  choosing a car. You're choosing a company with a lifetime commitment to protecting those you love." At no point in this website or elsewhere in Subaru's marketing does Subaru disclose the Fuel Pump Defect or the safety risks created by the  defect.

49.    Subaru also emphasized the safety and dependability in advertising for each of the Class Vehicles. These claims are made through every media channel, including print media, television, radio as well as the Internet, including social media.  As one example, Subaru's website contains the sales brochures for its current vehicles, as well   as older models. These brochures consistently trumpet the safety and dependability of the  Class Vehicles. For example, below is a screenshot of a 2019 Subaru Outback sales  brochure where Subaru states that "safe and sound is what we do best":[16]

---

[16]   https://www.subaru.com/content/dam/subaru/downloads/pdf/brochures/2019/Outback/ MY19_OBK_Brochure.pdf (last visited July 16, 2020).



50.    Subaru made similar statements regarding *all* Class Vehicles. For example, below is a screenshot of a 2018 Subaru Impreza sales brochure with a leading line that the vehicle is "safety focused":[17]



51.    Even as Subaru has known for years about the Fuel Pump Defect, it decided to continue to emphasize the long-term message that its vehicles are safe and reliable, including the Class Vehicles. Subaru never disclosed the Fuel Pump Defect or the unreasonable risk to safety it poses.

---

[17]    https://www.subaru.com/content/dam/subaru/downloads/pdf/brochures/2018/Impreza/2018_Subaru_Impreza.pdf  (last visited July 16, 2020).

52.     Subaru's advertising for Class Vehicles conveys a pervasive message that its vehicles are safe and reliable. Safety and reliability are material to consumers when purchasing  or leasing a vehicle, particularly a Subaru.

53.     Subaru advertised Class Vehicles as safe and reliable, but it concealed the  danger of the Fuel Pump Defect before and after the sale or lease of the Class Vehicles and to the detriment of consumers.

**E.     Plaintiff and Class Members Would Not Have Chosen or Would  Have Paid Less for Class Vehicles Had They Known of the Fuel Pump Defect**

54.     No owner or lessee of a Class Vehicle would have purchased their vehicle, or  would have paid less for their Class Vehicle, had they known of the defect or that Subaru would fail to fix a known defect in the fuel system.

55.     As a result of the Fuel Pump Defect in Class Vehicles and the costs associated with the defect, Plaintiff and all Class members have  suffered injury in fact, incurred damages, and have suffered harm as a result of Subaru's acts and  omissions.

56.     Plaintiff and each Class member suffered injury as they purchased their Class Vehicle under the express and implied warranties that their vehicles would operate safely and reliably  throughout the useful life of such vehicles. A vehicle containing the Fuel Pump Defect does not  operate as warranted and for its intended purpose because it does not operate safely or safely or reliably.  Accordingly, a Class Vehicle is worth less than it would have been without the fuels system defect.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

57.    Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Subaru was concealing the Fuel Pump Defect in the Class Vehicles and misrepresenting the safety, quality, and reliability of the Class Vehicles.

58.    Plaintiff and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Subaru did not report information within their knowledge to federal and state authorities, the dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Subaru had concealed information about the true nature of the Fuel Pump Defect in the Class Vehicles, which was discovered by Plaintiff only shortly before this action was filed. Nor, in any event, would such an investigation on the part of Plaintiff and other Class members have disclosed that Subaru valued profits over the safety of its customers, their friends and family, and innocent bystanders.

59.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims asserted herein.

### B.    Fraudulent Concealment Tolling

60.    All applicable statutes of limitation have also been tolled by Subaru's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

61.    Instead of disclosing the existence of the Fuel Pump Defect, Subaru falsely represented that the Class Vehicles were safe, dependable, reliable, and of high quality.

C.      **Estoppel**

62.     Subaru was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of the fuel system in the Class Vehicles.

63.     Subaru knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the fuel system in the Class Vehicles.

64.     Based on the foregoing, Subaru is estopped from relying on any statutes of limitations in defense of this action.

## VII.    CHOICE OF LAW ALLEGATIONS

65.     Because this action is brought in New Jersey, New Jersey's choice of law regime governs the state law allegations in this Complaint.

66.     Because Subaru is headquartered in New Jersey, and made all decisions related to these claims in this State, New Jersey has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action compared to any other state. Application of New Jersey law to Subaru and the claims of all Class members would accordingly not be arbitrary or unfair. Accordingly, Under New Jersey's choice of law analysis, New Jersey law should apply to the claims of all Class members regardless of the place of purchase or residence.

## VIII.   CLASS ALLEGATIONS

67.     Plaintiff brings this action on behalf of himself and as a class action pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and alternative subclass (collectively, the "Classes"):

**The Nationwide Class**

All persons or entities in the United States who owned and/or leased a Subaru vehicle with the Denso low-pressure fuel pump, including with part number prefix 42022-.

**The alternative California Subclass**

> All persons or entities in the state of California who owned and/or leased a Subaru vehicle with the Denso low-pressure fuel pump, including with part number prefix 42022-.

68. Excluded from the Class are individuals who have personal injury claims resulting from the fuel system in the Class Vehicles. Also excluded from the Class is Subaru and its officers, executives, subsidiaries and affiliates; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.

69. *Numerosity*. Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes—based on publicly available sales data for the Class Vehicles—that there are at least 200,000 members of the Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Subaru's books and records, as well as the recall reports that Subaru has submitted to NHTSA..

70. *Commonality and Predominance*: Federal Rule of Civil Procedure 23(a)(2) & (b)(3): This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

   a.  Whether the Class Vehicles contain a defect in their fuel system;

   b.  Whether the Fuel Pump Defect is a safety defect;

   c.  The nature of uniform representations Subaru made about the Class Vehicles' safety and reliability.

   d.  Whether and how long Subaru knew about the defect in the fuel system of the Class Vehicles;

  e.  Whether concealed information about the defect;

  f.  The relevant warranties made by Subaru relating to the Class Vehicles, the fuel system and the Fuel Pump Defect;

  g.  Whether Plaintiff and the other Class members overpaid for their Class Vehicles; and

  h.  Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

71. *Typicality*: Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Subaru's wrongful conduct as described above.

*72.* *Adequacy*: Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff's and his counsel.

73. *Declaratory Relief*: Federal Rule of Civil Procedure 23(b)(2): Subaru has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate declaratory relief, with respect to each Class as a whole.

74. *Superiority*: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Subaru, so it would be impracticable for the members of the Classes to individually seek

redress for Subaru's wrongful conduct. Even if Class members could afford  individual litigation, such litigation creates a potential for   inconsistent or contradictory judgments and increases the delay and expense to all parties and the   court system. By contrast, a class action is suited and intended to manage such difficulties and  provide the benefits of uniform and common adjudication, economy of scale, and comprehensive supervision.

**A.    Claims Brought on Behalf of the Nationwide Class**

**COUNT I**

**VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.***
**THE MAGNUSON-MOSS WARRANTY ACT**

75.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

76.    This claim is brought on behalf of the Nationwide Class.

77.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss  Warranty Act, 15 U.S.C. § 2301(3).

78.    Subaru is a "supplier" and "warrantor" within the meaning of the Magnuson-  Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

79.    The Class Vehicles are "consumer products" within the meaning of the  Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

80.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

81.    Subaru's written warranty within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

82. Subaru breached these warranties, as described in more detail above. Without limitation, the Class Vehicles are equipped with a defective fuel system that can cause loss of power and stalls.

83. Plaintiff and the other Class members have had sufficient direct dealings with either Subaru or its agents (*e.g.*, dealerships and technical support) to establish privity of contract with Subaru. Alternately, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Subaru and its dealers, and specifically, of Subaru's implied warranties.

84. At the time of sale or lease of each Class Vehicle, Subaru knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

85. Subaru has expressly admitted the existence of the Fuel Pump Defect and that it is a safety defect, but notwithstanding its recall of nearly 200,000 Class Vehicles. It has not offered a fix or indicated that a fix is available. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resorts to an informal dispute resolution procedure and/or afford Subaru a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

86. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

87. Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

## COUNT II

## FRAUDULENT CONCEALMENT  (BASED ON COMMON LAW)

88.    Plaintiff restates and realleges and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

89.    Plaintiff bring this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the State Subclass.

90.    Subaru intentionally concealed that the Class Vehicles are defective.

91.    Subaru further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each Class Vehicle and on its website, that the Class Vehicles it was selling had no significant defects,  that the Class Vehicles were safe, reliable, and of high quality, and would perform and  operate in a safe manner.

92.    The Class Vehicles purchased by Plaintiff and the other Class members  contained defective fuel systems.

93.    Subaru knew or should have known about the defect in the Class Vehicles when these representations  were made.

94.    Subaru had a duty to disclose that the Class Vehicles contained a defect as alleged herein, because of Subaru's  material representations and such a defect presented a risk to safety.

95.    The truth about the defective Class Vehicles was known only to Subaru;  Plaintiff and the other Class members did not know and could not reasonably know of these facts, and Subaru actively concealed  these facts from Plaintiff and Class members.

96.    Plaintiff and the other Class members reasonably relied upon Subaru's  deception.

97.    Subaru's false representations and omissions were material to consumers because they concerned the safety of the Class Vehicles, which played a significant role in the value  of the Class Vehicles.

98.     Subaru has still not made full and adequate disclosures and continues to defraud Plaintiff and Class members by concealing material information regarding the defect in the  Class Vehicles.

99.     Plaintiff and Class members were unaware of the omitted material facts  referenced herein, and they would not have acted as they did if they had known of the concealed   and/or suppressed facts, in that they would not have purchased or paid as much for the Class Vehicles with the Fuel Pump Defect, and/or would have taken other affirmative steps in light of  the information concealed from them. Plaintiff's and Class members' actions were justified.   Subaru was in exclusive control of the material facts, and such facts were not generally known to   the public, Plaintiff, or Class members.

100.     Because of the concealment and/or suppression of facts, Plaintiff and Class members sustained damage because they own Class Vehicles that are diminished in value as a result of Subaru's concealment of the true safety and quality of the Class Vehicles. Had  Plaintiff and Class members been aware of the Fuel Pump Defect, and Subaru's disregard for the truth, Plaintiff and Class members would have paid less for their Class Vehicles or would   not have purchased the Class Vehicles.

101.     As a direct result of Subaru's concealment of the defect, Plaintiff and the Class also incurred out of pocket damages related to the defect.

102.     Subaru's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that Subaru made to them.  Accordingly, an assessment of punitive damages is also appropriate.

## COUNT III

## BREACH OF CONTRACT (COMMON LAW)

103.    Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows.

104.    Plaintiff asserts this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the state Subclass.

105.    Subaru's misrepresentations and omissions alleged herein, including but not limited to, Subaru's concealment and suppression of material facts concerning the Class Vehicles, including the reliability and durability of the fuel system, caused Plaintiff and the other Class members to make their purchases or leases of their Class Vehicles.

106.    Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Class Vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased different vehicles that did not contain the Defective Fuel Pump. Accordingly, Plaintiff and other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

107.    Each and every sale or lease of a Class Vehicle constitutes a contract between Subaru and the purchaser or lessee. Subaru breached these contracts by selling or leasing to Plaintiff and the other Class members defective Class Vehicles and by misrepresenting or failing to disclose material facts concerning the safety, durability, performance, and quality of the Class Vehicles.

108.    As a direct and proximate result of Subaru's breach of contract, Plaintiff and other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT IV**

**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56:8-1, *ET SEQ.*)**

109.    Plaintiff restates and realleges, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

110.    Plaintiff bring this Count on behalf of himself and all similarly situated residents of the state of New Jersey for violations of New Jersey's Consumer Fraud Act.

111.    Defendants and Plaintiff are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

112.    Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

113.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.* ("N.J. CFA"), makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2.

114.    Defendants engaged in unconscionable commercial practice or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Plaintiff rely upon their acts of concealment, suppression, and/or omission.

115.    Defendants' conduct proximately caused injuries to Plaintiff and the other Class members.

116.    Defendants intentionally, affirmatively, and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Class.

117.    Plaintiff and other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct in that  Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive   the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendants' misrepresentations, fraud, deceptive practices, and omissions.

118.    Defendants' violations present a continuing risk to Plaintiff as well as to the  general public. Defendants' unlawful acts and practices complained of herein affect the public   interest.

119.    Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiff and the other Class members seek  an order enjoining Defendants' unlawful conduct, actual damages, treble damages, attorneys'   fees, costs, and any other just and proper relief available under the New Jersey CPA.

## COUNT V

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. STAT. ANN. § 12A:2-314)

120.    Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

121.    Plaintiff bring this Count on behalf of himself and all other Class members   for violations of implied warranty of merchantability under New Jersey law.

122.    Each defendant is a merchant with respect to motor vehicles within the meaning  of N.J. Stat. Ann. § 12A:2-314.

123.    Under N.J. Stat. Ann. § 12A:2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff purchased or leased a Class Vehicle from Defendants.

124.    The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

125.    Defendants marketed the Class Vehicles as safe, reliable, and high quality automobiles that would function as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiff's and the state Subclass members' decisions to purchase the Class Vehicles.

126.    Plaintiff and other Class members purchased the Class Vehicles from Defendants, or through Defendants' authorized agents for retail sales. At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

127.    Defendants knew or should have known the ordinary and specific use for which the Class Vehicles were purchased.

128.    Because of the Fuel Pump Defect, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

129.    Defendants knew about the defect in the Class Vehicles, allowing Defendants to cure their breach of warranty if they chose.

130.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability is unconscionable and unenforceable here. Specifically, such warranty limitations are unenforceable because Defendants knowingly sold a defective product without informing consumers about the defect. Any applicable time limits contained in Defendants' warranty periods are also unconscionable and inadequate to protect Plaintiff and other Class members. Among other

things, Plaintiff and other Class members had   no meaningful choice in determining these time limitations, the terms of which unreasonably   favor Defendants. A gross disparity in bargaining power existed between Defendants on the one side and Plaintiff and Class members on the other, particularly as Defendants knew of the defect at the time of sale.

131.    Plaintiff and Class members have afforded Defendants a reasonable opportunity  to cure the breach of written warranties therefore would be unnecessary and futile.

132.    Defendants were provided notice of these issues by numerous complaints filed against it, internal investigations, postings on websites, and other sources.

133.    Accordingly, Defendants are liable to Plaintiff and Class  members for damages in an amount to be proven at trial.

**COUNT VI**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
(BASED ON NEW JERSEY STATE LAW)**

134.    Plaintiff incorporates by reference all preceding allegations as though fully set  forth herein.

135.    Plaintiff bring this Count on behalf of himself and all similarly situated Class members.

136.    Plaintiff and other Class members entered into contracts with Defendants in connection with the acquisition of the Class Vehicles.

137.    Plaintiff and other Class members performed all material obligations under the contracts.

138.    Implied in all contracts is a covenant of good faith and fair dealing, imposing a  duty on the parties to act in good faith and deal fairly with one another.

139.    Plaintiff and other Class members had a reasonable expectation that, when they purchased their Class Vehicles from Defendants, the Class Vehicles would be free of  defects, especially defects that affected the safety and operability of the Class Vehicles.

140.    Defendants used their discretion to place inferior fuel pumps into the Class Vehicles without informing Plaintiff and Class members that the fuel pumps would create a safety defect in the Class Vehicles.

141.    Plaintiff and New Jersey Subclass members had no reason to know Defendants  had such fuel pumps into the Class Vehicles.

142.    Defendants  breached the covenant of good faith and fair dealing and breached its contractual duty to  Plaintiff and Class members by selling and leasing these Class Vehicles with the defect.

143.    As a direct and proximate result of Defendants' breach, Plaintiff and Class members suffered damages, including being induced to purchase the defective Class Vehicles.

**B.      Claims Brought on Behalf of the California Subclass**

144.    In the alternative to the Nationwide Class, Plaintiff asserts claims under California law.  In addition to the common law claims set forth above, he further asserts the following causes of action.

**CALIFORNIA COUNT I**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, ET SEQ.)**

145.    Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows.

146.    Plaintiff brings this claim on behalf of himself and the California Subclass.

147.    California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

148.    In the course of its business, Subaru violated the UCL by engaging in the following unlawful, fraudulent, and unfair business acts and practices:

a.    knowingly and intentionally concealing from Plaintiff and California Subclass members that the Class Vehicles suffer from a defect while obtaining money from Plaintiff and Class members;

b.    marketing the Class Vehicles as safe, reliable and defect-free; and

c.    violating California statutory and common law prohibiting false advertising, fraudulent concealment, and breach of implied warranty.

149.    Subaru's scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiff and the California Subclass, and Subaru misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the California Subclass would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiff and the California Subclass would not have purchased the Class Vehicles, or would have paid significantly less for them.

150.    Plaintiff and California Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Subaru's misrepresentations and their concealment of and failure to disclose material information.

151.    Pursuant to CAL. BUS. & PROF. CODE § 17200, Plaintiff and the California Subclass seek any such orders or judgments as may be necessary to restore to Plaintiff and California Subclass members any money acquired by unfair competition, including restitution

and/or restitutionary disgorgement, as provided in CAL. BUS.& PROF. CODE §§ 17203 and 3345, and any other just and proper relief available under the UCL.

## CALIFORNIA COUNT II

## VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.)

152.   Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows.

153.   Plaintiff bring this claim on behalf of himself and the California Subclass.

154.   California's Consumers Legal Remedies Act ("CLRA"), CAL.CIV.CODE § 1750, et seq., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

155.   The Class Vehicles are "goods" as defined in CAL. CIV. CODE § 1761(a).

156.   Plaintiff and the California Subclass members are "consumers" as defined in CAL. CIV. CODE § 1761(d), and Plaintiff, the California Subclass members, and Subaru are "persons" as defined in CAL. CIV. CODE § 1761(c).

157.   As alleged above, Subaru made representations concerning the reliability and safety of the Class Vehicles that were misleading.

158.   In purchasing or leasing the Class Vehicles, Plaintiff, and California Subclass members were deceived by Subaru's failure to disclose the Fuel Pump Defect.

159.   Subaru's conduct, as described herein, was and is in violation of the CLRA and violates at least the following enumerated CLRA provisions:

a.      CAL. CIV. CODE § 1770(a)(2): Misrepresenting the approval or certification of goods;

b.      CAL. CIV. CODE § 1770(a)(3): Misrepresenting the certification by another;

c.      CAL. CIV. CODE § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

d.      CAL. CIV. CODE § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

e.      CAL. CIV. CODE § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

f.      CAL. CIV. CODE § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

160.   Subaru intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff and California Subclass members.

161.   In purchasing or leasing the Class Vehicles, Plaintiff and the California Subclass members were deceived by Subaru's failure to disclose the defect, as described above.

162.   Plaintiff and the California Subclass members reasonably relied upon Subaru's material omissions and false misrepresentations. They had no way of knowing that Subaru's representations were false and gravely misleading. Plaintiff and the California Subclass members did not, and could not, unravel Subaru's deception on their own.

163.   Subaru knew or should have known that its conduct violated the CLRA.

164. Subaru owed Plaintiff and the California Subclass members a duty to disclose the truth about its emissions systems manipulation because Subaru:

    a. possessed exclusive knowledge about the fuel systems in the Class Vehicles, including the defect; and

    b. intentionally concealed the foregoing from Plaintiff and the California Subclass members.

165. Subaru had a duty to disclose that the Class Vehicles were defective, because, having volunteered to provide information to Plaintiff and the California Subclass members, Subaru had the duty to disclose not just the partial truth, but the entire truth.

166. Subaru also had a duty to disclose that the Class Vehicles were defective because the defect creates a safety issue.

167. Further, Plaintiff and the California Subclass members relied on Subaru's material omissions and representations that the Class Vehicles they were purchasing were free from defects.

168. Plaintiff and the California Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased the Class Vehicles, or would have paid less for them. Plaintiff's and the California Subclass members' actions were justified. Subaru was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or the California Subclass members.

169. Subaru's conduct proximately caused injuries to Plaintiff and the California Subclass members.

170.   Plaintiff and the California Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Subaru's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Subaru's misrepresentations and omissions.

171.   Subaru's violations present a continuing risk to Plaintiff as well as to the general public. Subaru's unlawful acts and practices complained of herein affect the public interest.

172.   Subaru knew, should have known, or was reckless in not knowing of the defect in the fuel system and that the Class Vehicles were not suitable for their intended use.

173.   The facts concealed and omitted by Subaru from Plaintiff and the California Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiff and the California Subclass members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would not have paid the prices they paid.

174.   Plaintiff's and the California Subclass members' injuries were proximately caused by Subaru's unlawful and deceptive business practices.

175.   Plaintiff and the California Subclass members are entitled to recover actual and punitive damages under the CLRA pursuant to CAL.CIV.CODE § 1780(a), and an additional award of up to $5,000 to each Plaintiff and California Subclass member who is a "senior citizen."

**CALIFORNIA COUNT III**

**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, ET SEQ.)**

176.    Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows.

177.    Plaintiff bring this claim on behalf of himself and the California Subclass.

178.    CALIFORNIA BUS.& PROF. CODE § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

179.    Subaru caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Subaru, to be untrue and misleading to consumers, including Plaintiff and the California Subclass members.

180.    Subaru has violated CAL. BUS. & PROF. CODE § 17500 because the misrepresentations and omissions regarding the reliability and safety of the Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

181.    Plaintiff and the California Subclass members have suffered an injury in fact, including the loss of money or property, as a result of Subaru's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and the California Subclass

members relied on the misrepresentations and/or omissions of Subaru with respect to the reliability and safety of the Class Vehicles.

182.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Subaru's business. Subaru's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

183.    413. Plaintiff, individually and on behalf of the California Subclass, requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and the California Subclass members any money Subaru acquired by unfair competition, including restitution and/or restitutionary disgorgement and for such other relief as may be appropriate.

## CALIFORNIA COUNT IV

## BREACH OF IMPLIED WARRANTIES (CAL. COM. CODE §§ 2314, 10103, AND 10212)

184.    Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows.

185.    Plaintiff bring this claim on behalf of himself and the California Subclass.

186.    Subaru is and was at all relevant times a "merchant" with respect to the Class Vehicles under CAL. COM. CODE §§ 2104(1) and 10103(c), and "seller" of the Class Vehicles under § 2103(1)(d).

187.    With respect to leases, Subaru is and was at all relevant times "lessors" of motor vehicles under CAL. COM. CODE § 10103(a)(16).

188.    The Class Vehicles are and were at all relevant times "goods" within the meaning of CAL. COM. CODE §§ 2105(1) and 10103(a)(8).

189.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to CAL.COM.CODE §§ 2314 and 10212.

190.    In addition, a warranty that the Class Vehicles were fit for their particular purpose is implied by law pursuant to CAL.COM.CODE § 2315. Subaru knew at the time of sale that Plaintiff and the California Subclass intended to use the Class Vehicles for a purpose requiring a particular standard of performance, reliability and safety, and that Plaintiff and the California Subclass were relying on Subaru's skill and judgment to furnish suitable products for this particular purpose.

191.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.

192.    As a direct and proximate result of Subaru's breach of its implied warranties, Plaintiff and the California Subclass members have been damaged in an amount to be determined at trial.

193.    Subaru was provided notice of the issues raised in this Count and this Complaint as detailed above.

## CALIFORNIA COUNT V

## VIOLATIONS OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTIES (CAL. CIV. CODE §§ 1791.1 AND 1792)

194.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

195.    Plaintiff bring this claim on behalf of himself and the California Subclass.

196.    Plaintiff and the California Subclass members who purchased or leased Class Vehicles in California are "buyers" within the meaning of CAL. CIV. CODE § 1791.

197.   The Class Vehicles are "consumer goods" within the meaning of CAL.CIV. CODE § 1791(a).

198.   Subaru is a "manufacturer" of the Class Vehicles within the meaning of CAL. CIV. CODE § 1791(j).

199.   Subaru impliedly warranted to Plaintiff and California Subclass members that the Class Vehicles were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) and 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

200.   CAL. CIV. CODE § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

> i.   Pass without objection in the trade under the contract description.
>
> ii.   Are fit for the ordinary purposes for which such goods are used.
>
> iii.   Are adequately contained, packaged, and labeled.
>
> iv.   Conform to the promises or affirmations of fact made on the container or label.

201.   The Class Vehicles would not pass without objection in the automotive trade because they are equipped with a defective fuel systems. The defect renders the Class Vehicles unsafe, and thus, not fit for ordinary purposes.

202.   The Class Vehicles are not adequately labeled because the labeling fails to disclose the Defective Dashboard.

203.   In the various channels of information through which Subaru sold the Class Vehicles, Subaru failed to timely disclose material information concerning the Class Vehicles which it had a duty to disclose. Subaru owed Plaintiff and the California Subclass members a duty

to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the California Subclass, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

204.    Subaru breached the implied warranty of merchantability by manufacturing and selling Class Vehicles equipped with a Fuel Pump Defect. Furthermore, this defect has caused Plaintiff and California Subclass members to not receive the benefit of their bargain and has caused the Class Vehicles to diminish in value.

205.    As a direct and proximate result of Subaru's breach of the implied warranty of merchantability, Plaintiff and the California Subclass received goods whose dangerous condition substantially impairs their value.

206.    Plaintiff and the California Subclass members have been damaged as a result of the diminished value of Subaru's products.

207.    Under CAL. CIV. CODE §§ 1791.1(d) and 1794, Plaintiff and the California Subclass members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

208.    Under CAL. CIV. CODE § 1794, Plaintiff and the California Subclass members are entitled to costs and attorneys' fees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and State Subclass, respectfully requests that the Court enter judgment in their favor and against Subaru, as follows:

A.     Certification of the proposed Nationwide Class and State Subclass with Plaintiff as Class Representatives;

B.     Appointment of Plaintiff's counsel as Class Counsel;

C.     Restitution, including recovery of the purchase   price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles;

D.     Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

E.     Monetary relief under certain consumer protection statutes;

F.     An order requiring Subaru to pay both pre- and post-judgment interest on any amounts awarded;

G.     An award of costs and attorneys' fees; and

H.     Such other or further relief as may be appropriate.


Dated: July 17, 2020                 Respectfully submitted,

                                     /s/ Christopher A. Seeger

                                     Christopher A. Seeger
                                     Christopher L. Ayers
                                     SEEGER WEISS LLP
                                     55 Challenger Road, 6th Floor
                                     Ridgefield Park, New Jersey 07660
                                     (973) 639-1000
                                     cseeger@seegerweiss.com
                                     cayers@seegerweiss.com

                                     Scott A. George
                                     SEEGER WEISS LLP
                                     1515 Market Street, Suite 1380
                                     Philadelphia, PA 19102
                                     (215) 564-2300
                                     sgeorge@seegerweiss.com

                                     *Counsel for Plaintiff and the Proposed Class*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: July 17, 2020                    Respectfully submitted,

                                        /s/ Christopher A. Seeger

                                        Christopher A. Seeger
                                        Christopher L. Ayers
                                        SEEGER WEISS LLP
                                        55 Challenger Road, 6th Floor
                                        Ridgefield Park, New Jersey 07660
                                        (973) 639-1000

                                        *Counsel for Plaintiff and the Proposed Class*